IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

MUELLER COPPER TUBE          )
PRODUCTS, INC.,              )
                            )
          Plaintiff,         )
                            )
vs.                         )        No.   04-2617 MaV
                            )
PENNSYLVANIA MANUFACTURERS'   )
ASSOCIATION INSURANCE COMPANY, )
                            )
          Defendant.         )

_____

ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

_____

Before the court is the November 16, 2005 motion of the
plaintiff, Mueller Copper Tube Products, Inc. ("Mueller"), to
compel the defendant, Pennsylvania Manufacturers' Association
Insurance Company ("PMA"), to provide proper discovery responses
and to impose sanctions against PMA.  This motion has been referred
to the United States Magistrate Judge for determination.  For the
following reasons, the motion is granted in part and denied in
part.

BACKGROUND

In 1999, Mueller was named as a defendant in a lawsuit brought
pursuant to the Comprehensive Environmental Response Compensation
and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq*.  In
that case, the plaintiffs alleged that Mueller was liable for

clean-up costs for two hazardous waste sites located in eastern Arkansas.  The case was settled by Mueller in December of 2004.

In the present case, Mueller is seeking damages from PMA in a breach of contract claim for the expenses it incurred in defending and settling the underlying environmental clean-up lawsuit. Mueller also seeks a declaratory judgment setting forth the rights and obligations of the parties under eleven insurance policies issued between 1967 and 1977 by PMA to Halstead Industries, Inc.,("Halstead"), the predecessor of Mueller.  Mueller claims that PMA is required to provide coverage, including a defense, for all claims asserted against Mueller.   Mueller contends that the insurance policies provide coverage for property damage and each contains a "duty to defend" clause.   Unfortunately, Mueller has been unable to locate any policies predating 1972.  In its answer, PMA denied coverage and asserted fourteen affirmative defenses, partly based on its interpretation of the insurance policies at issue in this case, particularly the pollution exclusion clause.

On January 21, 2005, Mueller served PMA with its first set of interrogatories and first request for production of documents.  In its discovery requests, Mueller asked that PMA provide certain facts regarding the applicable insurance policies.   It also requested that PMA provide copies of all documents referring or relating to Mueller or its predecessor, Halstead, any facility

2

owned by either such company, or the interpretation of the key insurance exclusion on which PMA relies in refusing coverage, the pollution exclusion. PMA duly responded to the discovery requests.

Claiming that PMA's discovery responses were inadequate and non-responsive, Mueller filed a motion to compel more complete answers. By order dated July 15, 2005, the court granted in part and denied in part Mueller's motion to compel and ordered PMA to file supplemental answers and produce designated documents within fifteen days of the date of service of the order.  In accordance with the court's order, PMA produced some additional documents and submitted verified supplemental interrogatory responses.  In its supplemental responses, PMA acknowledged that it had issued insurance policies to Halstead and Mueller during the entire period at issue, 1967 to 1977.  PMA later amended its supplemental response to Interrogatory No. 1 to reflect that coverage did not commence until March 31, 1972.  Mueller now claims that PMA's supplemental responses are still inadequate and as such, Mueller has violated the court's July 15, 2005 order.

On August 25, 2005, Mueller took a Rule 30(b)(6) deposition of PMA's corporate witness, Mark E. Travis, Senior Environmental Claims Specialist for PMA.  One area of inquiry during the Rule 30(b)(6) deposition was the efforts made by PMA to locate documents responsive to Mueller's discovery requests and the July 15, 2005

3

order.  Mueller claims that PMA's corporate witness was unprepared and had not conducted a proper investigation before testifying.

During the Rule 30(b)(6) deposition, Mueller learned that PMA had certain computerized records relating to policies issued to Halstead and Mueller and that the computerized records had not been produced.  Once the omission was noted, the deponent, Mark Travis, called his office, had his assistant enter into PMA's computerized Name and Address Database (NMAD) the seven-digit account numbers listed on each policy supposedly issued to Mueller and/or Halstead, and had the NMAD screens associated with each policy printed and faxed to the deposition site.  A total of eighteen pages of NMAD screens were faxed by PMA to the deposition site.  These printed screens were then provided to Mueller's counsel during the deposition.  One of the printed screens revealed that the 1972 policy was coded as a renewal policy, implying that PMA had indeed issued policies to Halstead/Mueller prior to 1972, contrary to PMA's supplemental interrogatory answer denying coverage prior to 1972.  As a result, Mueller now claims that PMA failed to conduct an adequate search for responsive documents, misrepresented the non-existence of insurance policies prior to 1972, and intentionally withheld documents indicating the existence of the prior policies.

Following the Rule 30(b)(6) deposition, Mueller, on October

4

6, 2005, moved to amend its complaint to allege that PMA acted in bad faith during the discovery process. Mueller also served its second set of interrogatories and document requests and its first set of requests for admission on PMA, which were largely directed at Mueller's claim that PMA acted in bad faith. In addition, Mueller's second set of interrogatories and document requests and its requests for admission sought information about a May 8, 1970 letter from the Insurance Rating Board ("the IRB") to the Commissioner of Insurance of Pennsylvania seeking regulatory approval to include the pollution exclusion in insurance policies and explaining the necessity of the exclusion.

On November 8, 2005, Mueller conducted a second Rule 30(b)(6) deposition of PMA's corporate representative, Mark Travis, on eight additional topics: (1) PMA's response to Mueller's request for coverage and a defense, including all analysis done of Mueller's request, and all communications regarding same; (2) the information sought in Mueller's second set of interrogatories; (3) the positions that PMA has taken, including but not limited to, those taken with regulatory authorities regarding the meaning of the pollution exclusion; (4) the intent of the drafters of the IRB memo to the Pennsylvania Insurance Commissioner regarding the pollution exclusion; (5) the meaning and intent of the IRB memo; (6) the positions taken by PMA internally regarding the meaning of the

pollution exclusion; (7) the location and existence of any documents that have ever existed relating to or evidencing topics 2 through 6 above; and (8) PMA's efforts to locate documents relating to Mueller or Halstead.

During the second Rule 30(b)(6) deposition, Mueller learned that PMA maintains an archive of documents prior to 1977 and has used three separate companies over the years for archiving the documents.  Only the company that maintains the most recent archived documents, that is, documents from the last seven to eight years, however, can search electronically for documents. Apparently, PMA, prior to the Rule 30(b)(6) deposition, searched only the archives that could be searched electronically; thus, PMA searched the archives only for documents placed into the archives in the last seven to eight years.  The policies at issue in this lawsuit date back to the 1960s and 1970s, and the pollution exclusion was added in the 1970s.  Mueller now claims that PMA violated the court's July 15, 2005 order by failing to search the bulk of its archived records.

On November 16, 2005, Mueller filed the present motion to compel and for sanctions, demanding that PMA fully and completely respond to Interrogatory Nos. 1, 2, 3, 4, 5, 6, 9, and 10 of its second set of interrogatories and Document Request Nos. 4, 5, and

6

6 of its second set of document requests, and Request for Admissions Nos. 1, 2, 4, 5, 7, 9, 10, 12, 13, and 14. PMA filed a timely response objecting to Mueller's demands.

Mueller also seeks expenses and fees pursuant to Rule 37(a)(4)(A) for bringing the motion to compel and for any re-deposition of PMA, should the court order that Mueller submit to another Rule 30(b)(6) deposition. In addition, Mueller requests that as a sanction the court enter judgment against PMA on all claims and that the court declare that the eleven insurance policies identified in the amended complaint provided coverage to Mueller and required PMA to defend Mueller in the underlying environmental clean-up action.

<u>ANALYSIS</u>

1.  <u>Alleged Violations of the July 15 Order</u>

Mueller first asks the court to impose sanctions pursuant to Federal Rule of Civil Procedure 37(b) for violations of the court's July 15, 2005 order, which granted in part and denied in part Mueller's first motion to compel. Mueller asserts that such sanctions should be imposed on the grounds that PMA has acted in bad faith during the discovery process by failing to timely produce the printouts of the NMAD database screens and by failing to search all relevant files. As sanctions, Mueller seeks an order "finding

7

PMA liable for the claims asserted by Mueller, reserving only the issue of the amount of damages for the bad faith claim for resolution' and further finding that Pennsylvania law governs Mueller's bad faith claim;" or (2) "finding that coverage and a duty to defend existed under each of the policies at issue." (Pl. Mueller's Mem. in Supp. of Mot. to Compel Disc. and for Sanctions at 12-13.)  In essence, Mueller seeks a default judgment against PMA in this case.

If a party fails to obey an order to provide or permit discovery, the court "may make such orders in regard to the failure as are just" including the imposition of any of the sanctions listed in Rule 37(b)(2)(A),(B), & (C), among which is the rendering of a judgment of default against the disobedient party.  FED. R. CIV. P. 37(b)(2).  In determining whether to render a default judgment against the disobedient party, the court should consider: (1) whether the party acted with willfulness, bad faith, or fault; (2) prejudice resulting from the discovery violation; (3) whether the party had been warned that his conduct could lead to extreme sanctions; and (4) whether less drastic sanctions were imposed or considered.  *Freeland v. Amigo*, 103 F.3d 1271 (6th Cir. 1997)(citing *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154, 155 (6th Cir. 1988).

8

After a review of the memoranda submitted by both sides and the depositions and affidavits filed with the court, the court finds that PMA has not acted in bad faith.  In its response to Mueller's motion, PMA acknowledges that it initially failed to produce the NMAD screens in response to Mueller's discovery request and as ordered by the court, but PMA explains that its failure to do so was a mere oversight and not intentional. PMA asserts that its lack of bad faith in failing to produce the eighteen computer screen printouts is evidenced by the candor with which Travis discussed his efforts to locate documents and the existence of the NMAD database.  Travis explained that he put in the account numbers provided by Mueller but that the account numbers as listed for the '67, '68', '69 and '70 policies were not contained in PMA's computerized database and the number for the '71 policy jumped to the '72 policy issued to Halstead. Once the oversight was recognized during the deposition, the eighteen screen printouts were immediately faxed to the deposition site.

The court also finds that Mueller was not prejudiced by the production of the eighteen pages of computer screen printouts during the first Rule 30(b)(6) deposition of PMA.  Counsel for Mueller had adequate time to review the documents and question Travis about the documents at both the first Rule 30(b)(6)

deposition on August 25, 2005, and again at the second Rule 30(b)(6) deposition on November 8, 2005. Mueller was also able to use the documents as the basis for a request for admission served on PMA in September of 2005 following the first Rule 30(b)(6) deposition. At that point in time, discovery was ongoing, the discovery deadline having been extended to November 15, 2004.

Although one computer screen did indicate that the 1972 insurance policy was coded as a "renewal" policy, it did not conclusively indicate that a 1971 policy existed or that any policies prior to 1971 existed. Thus, the court does not consider PMA's supplemental interrogatory response denying the existence of policies prior to 1972 to be a blatant misrepresentation. The court also notes that PMA's earlier interrogatory response admitted the existence of these policies.

As for PMA's failure to search all of its archives of documents prior to the Rule 30(b)(6) depositions, PMA explains that its archive system contains mostly workers compensation claims files plus administrative-type files such as a payroll, marketing, sales, accounts payable, and human resources files which are not relevant to this litigation. (Resp. and Mem. to Pl.'s Mot. to Compel Disc. and for Sanctions, Ex. F, Aff. of Laura Archie ("Archie Aff.") at ¶ 6.) To PMA's knowledge, no environmental

claims files are contained in its archive systems. (*Id.*) For that reason, the archive system was not searched in full. Therefore, the court finds that PMA acted in good faith in deciding not to search the archived documents in full.

Furthermore, Mueller did not suffer any prejudice by PMA's failure to search its archive databases prior to the Rule 30(b)(6) depositions. According to the affidavit of Laurie Archie, Environmental Claims Supervisor at PMA,[1] following the second Rule 30(b)(6) deposition, PMA employees searched all possible document repositories within PMA for any documents relating to Mueller, Halstead, the IRB, the Insurance Services Office (the "ISO"), the May 1970 IRB memorandum, PMA's relationship with the IRB, the pollution exclusion, and the denial of coverage to Mueller, and no responsive documents were found. (Archie Aff. at ¶¶ 3-9.)

Accordingly, the court finds that PMA has fully searched its archived documents and all potential document sources, all responsive documents have been provided to Mueller, PMA has not violated the court's July 15 order, and Mueller was not prejudiced by PMA's conduct. Even if the court were to find that PMA's

---

[1] Archie's affidavit filed with PMA's response was unverified, but a notarized copy of Archie's affidavit was filed with the clerk of court on December 6, 2005.

conduct failed to comply with the court's order, the sanctions sought by Mueller would not be warranted. The conduct occurred before PMA was warned about the potential for a default judgment for noncompliance, no lesser sanctions have been imposed, and therefore under *Freeland*, entry of default judgment would be inappropriate at this time.

2.   <u>PMA's Responses to Mueller's Second Set of Discovery Requests and Requests for Admissions</u>

Mueller also claims that PMA has failed to provide proper responses to its second set of discovery requests in the following respects: (1) PMA has made no effort to produce information relating to the IRB, the May 1970 IRB memorandum, or the drafting of the pollution exclusion at issue in this litigation in response to Document Request Nos. 4 and 6 and Interrogatory Nos. 1, 2, and 3 of Mueller's second set of discovery and Requests for Admissions Nos. 1, 2, 4, 5, and 12; (2) PMA has failed to produce information relevant to PMA's efforts to analyze Mueller's claim for coverage in response to Interrogatory Nos. 4, 5, and 10 of Mueller's second set of discovery and Request for Admissions Nos. 7, 9, and 10 by failing to contact Nancy Maratea, a former PMA employee who handled the Mueller claim file at issue; (3) PMA did not respond properly to questions involving the locations from which each policy was

issued in response to Interrogatory No. 6 of Mueller's second set
of discovery; and (4) PMA did not respond properly to Request for
Admissions Nos. 13 and 14 asking PMA to admit that the amounts
Mueller paid in settlement of the underlying clean-up litigation
and the amounts paid for attorney fees were reasonable, and to
Interrogatory No. 9 of Mueller's second set of discovery asking PMA
to explain its basis for denying coverage.[2]

After a review of the memoranda filed by both parties and the
supporting affidavits and deposition testimony, the court finds
that PMA has disclosed and produced all non-privileged information
and documents in its possession regarding the IRB, the May 1970 IRB
memorandum, and the drafting of the pollution exclusion.   These
documents are in the possession of the ISO, the successor to the
IRB.   (Resp. and Mem. to Pl.'s Mot. to Compel Disc. and for
Sanctions, Ex. C, Aff. of Mark Travis ("Travis Aff.") at ¶ 5.)[3]
PMA attempted to obtain these documents from the ISO, but the ISO
would not release the documents without a subpoena.  (*Id.*)  Having

---

[2] Mueller failed to attach to its motion PMA's responses to
its second set of interrogatories and documents requests and to its
first set of admissions.

[3] Travis's affidavit filed with PMA's response was unverified,
but a notarized copy of Travis's affidavit was filed with the clerk
of court on December 6, 2005.

worked closely with PMA's outside counsel, Michael Cohen, in a similar insurance coverage case in Pennsylvania, *Sunbeam v. Liberty Mutual Ins. Co., et al.*, C.A. No. GD 95-13947, (Crt. Cm. Pleas, Allegheny Cnty, PA), Travis states under oath that Cohen does not possess any documents concerning the IRB, ISO, the IRB memorandum, or PMA's construction of the pollution exclusion that have not already been produced in the present litigation. (*Id.* at ¶¶ 2-5.) Subsequent to the filing of the motion to compel, PMA supplemented its discovery response by producing a copy of the deposition transcript of the ISO Records Custodian from the *Sunbeam* case. In addition, PMA's counsel has researched other cases dealing with the 1970 pollution exclusion and the May 1970 IRB memo and has discovered several affidavits from former members of the Pennsylvania Insurance Department concerning these issues, all of which have been provided to Mueller's counsel even though they were not in PMA's possession and were equally available to Mueller and its counsel.

As to Mueller's complaint that PMA's responses to Interrogatory Nos. 4, 5, and 10 of Mueller's second set of discovery and Request for Admissions Nos. 7, 9, and 10 were incomplete because PMA failed to contact Nancy Maratea, a former PMA employee who handled the Mueller claim file at issue, PMA has

14

shown to the court that it did in fact contact Maratea after the second Rule 30(b)(6) deposition and that Maratea had no additional independent recollection of PMA's effort to investigate or analyze Mueller's claim for coverage other than that which was contained in the claim file.  PMA has produced the entire claim file to Mueller. Accordingly, the court finds that PMA has provided all information and documents to Mueller responsive to these discovery requests and has fully responded the requests for admissions.  Therefore, the motion to compel is denied as to Interrogatory Nos. 4, 5, and 10 of Mueller's second set of discovery and Request for Admissions Nos. 7, 9, and 10.

As to Mueller's claim that PMA did not respond properly to questions involving the locations from which each policy was issued in response to Interrogatory No. 6 of Mueller's second set of discovery, PMA has agreed in its response to provide that information. (Resp. and Mem. to Pl.'s Mot. to Compel Disc. and for Sanctions at 18.)  Thus, the motion to compel is denied as to Interrogatory No. 6.

With respect to Request for Admissions Nos. 13 and 14 asking PMA to admit that the amounts Mueller paid in settlement of the underlying clean-up litigation and the amounts paid for attorney fees were reasonable and Interrogatory No. 9 as it relates to

Request for Admissions Nos. 13 and 14, PMA objected to the two requests on the grounds that the information as to reasonableness of attorney fees and settlement amount was within the purview of expert testimony.  Despite its objections, PMA denied both requests.  The court finds PMA's objections to be unjustified. Within the insurance industry, insurance companies routinely approve and pay attorney fees in cases in which the insurance company is obligated to provide a defense.  Likewise, insurance companies routinely approve and authorize settlements of disputed claims in cases in which the insurance company provides coverage. The court sees no reason why PMA would need an expert opinion in this instance to determine the reasonableness of the amounts Mueller paid to settle the underlying environmental clean-up case or to determine the reasonableness of the attorney fees paid by Mueller in defending the underlying environmental clean-up case. If PMA had provided coverage and a defense, PMA would have determined these amounts without the benefit of an expert opinion. Accordingly, Mueller's motion to compel is granted as to Request for Admissions Nos. 13 and 14 and Interrogatory No. 9 as it relates to Request for Admissions Nos. 13 and 14, and PMA is ordered to file amended answers to these two requests and Interrogatory No. 9 as it relates to Request for Admissions Nos. 13 and 14.

3.   <u>PMA's Preparation of its Rule 30(b)(6) Representative</u>

Mueller takes the position that PMA  failed to comply with Rule 30(b)(6) by failing to adequately prepare its designated deponent.  In particular, Mueller complains that prior to the Rule 30(b)(6) deposition  PMA's Rule 30(b)(6) witness, Mark Travis, did not contact PMA's former employee, Nancy Maratea, the PMA claims adjuster assigned to Mueller's claim in 1999, to ascertain her knowledge of the file.  Mueller also complains that Travis also failed to contact Michael Cohn, outside counsel for PMA in the *Sunbeam* case, an environmental coverage case, about Cohn's possession of documents, including the 1970 memo filed by the IRB with the Pennsylvania Commissioner of Insurance and about Cohn's knowledge of the purpose and function of the IRB and PMA's relationship to the IRB. Because of these failures, Mueller claims Travis was unprepared to testify as to the topics listed in its Rule 30(b)(6) deposition notice.

A corporation has an obligation to provide knowledgeable persons, adequately prepared to testify as to the topics specified by the defendants in the 30(b)(6) deposition notice. *Hilton Hotels Corp. v. Dunnet, 2002 WL 1482543* (W.D. Tenn. 2002)*; FDIC v. Butcher*, 116 F.R.D. 196, 199 (E.D. Tenn. 1986)(stating that a corporation must make a good-faith effort to designate persons

17

having knowledge of the matter sought and to prepare those persons); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)(recognizing that Rule 30(b)(6) requires a corporation not only to produce persons to testify with respect to the designated matters, but also to prepare them so that they may give complete, knowledgeable, and binding answers on behalf of the corporation).

PMA maintains that it has satisfied its obligations under Rule 30(b)(6) by designating Mark Travis, PMA's Senior Environmental Claims Specialist, as its Rule 30(b)(6) deponent, and that he was adequately prepared.  Travis has been employed by PMA since 1990. He was initially employed as an environmental claims specialist, then became supervisor of the environmental claims unit, and finally became a senior environmental claims specialist, his current position.  He was assigned as the claim representative on Mueller's claim for coverage, after the claims adjuster who was initially assigned to Mueller's file, Nancy Maratea, left PMA.  He is also the claims representative handling the demand for coverage in the *Sunbeam* case.  Mark Travis signed PMA's responses to Mueller's discovery requests.

The Rule 30(b)(6) notice designated the following topics of inquiry at the deposition:  (1) PMA's response to Mueller's request

18

for coverage and a defense including all analysis done of Mueller's
request and all communications regarding same; (2) the information
sought in Mueller's second set of interrogatories; (3) the
positions that PMA has taken, including but not limited to those
taken with regulatory authorities regarding the meaning of the
pollution exclusion; (4) the intent of the drafters of the IRB memo
to the Pennsylvania Insurance Commissioner regarding the pollution
exclusion; (5) the meaning and intent of the IRB memo; (6) the
positions taken by PMA internally regarding the meaning of the
pollution exclusion; (7) the location and existence of any
documents that have ever existed relating or evidencing topics 2
through 6; and (8) PMA's efforts to locate documents relevant to
Mueller or Halstead. (Pl.'s Mem. in Supp. of Mot. to Comp. and for
Sanctions, Ex. K.)

Clearly, Travis, as the claims representative handling the
Mueller file, was knowledgeable about PMA's handling of Mueller's
claim, PMA's responses to Mueller's discovery requests, the
location and existence of documents, and PMA's efforts to locate
responsive documents, the topics for which he has been offered as
a witness. Indeed, the court cannot imagine a more appropriate PMA
witness on these topics. As to topics related to the IRB, Travis
testified that he checked with human resources at PMA to see if

there was anyone still employed with the company that might have more information, and he did not find anyone. (Resp. and Mem. to Pl's Mot to Compel Disc. and for Sanctions, Ex. E, Travis Dep. ("Travis Dep."), Nov. 8, 2005, at 34, 37.)  Travis was able to testify as to these topics based on his historical knowledge with PMA gained from handling environmental claims for fifteen years. (*Id.* at 37.)

Rule 30(b)(6) requires the designated witness to "testify as to matters known or reasonably available to the organization." FED. R. CIV. P. 30(b)(6).  If the corporation does not possess such knowledge so as to prepare its witness or another designee, then its obligations under Rule 30(b)(6) cease. *Dravco Corp. v. Liberty Mutual Ins. Co.*, 164 F.R.D. 70, 76 (D. Neb. 1995).

According to the affidavit of Mark Travis, to prepare for his 30(b)(6) deposition, he: (1) reviewed all of the documents in the claim file; (2) made sure he understood some of the legal issues; (3) looked at his electronic notes about the file; (4) consulted with his superiors about the file; (5) reviewed summaries from PMA's expert Robert Lazarus; (6) reviewed documents from PMA's counsel's files; (7) consulted with PMA's attorney; (8) consulted with an underwriter at PMA, Mike Stephens, in order to find out information concerning the history of PMA's involvement with

organizations such as the IRB and the ISO; (9) searched electronic databases for Halstead files; and (10) searched through file drawers in the claims department at the PMA home office for relevant documents.

Mueller complains that Travis did not contact PMA's counsel in the *Sunbeam* litigation in order to prepare for his deposition. In light of the fact that Travis was the adjuster on the Sunbeam case, the court sees no need for Travis to have contacted outside counsel to prepare for his deposition. Based on his position as adjuster, he appeared to have adequate knowledge on behalf of PMA of the *Sunbeam* case through his handling of the file. As previously discussed, Travis's failure to communicate with Maratea, the previous claims handler for the Mueller file, would not have revealed any additional information to Travis.[4] In addition, Travis was able to provide testimony on behalf of the company concerning the IRB, the pollution exclusion language, and PMA's relationship to IRB and ISO. Travis' inability to answer all the questions propounded about the intent of the drafters of the 1970 IRB memorandum concerning the pollution exclusion and the meaning

---

[4]If Mueller is unsatisfied with PMA's position concerning Maratea's independent knowledge, Mueller can, of course, depose Maratea.

21

of the 1970 IRB memorandum does not necessarily equate to unpreparedness, but merely a lack of knowledge on the part of PMA. PMA did not draft the IRB memo.  These topics would be more appropriately addressed to the IRB or its successor, the ISO.

After reviewing the Rule 30(b)(6) deposition testimony of Travis in its entirety and having considered the arguments of each party, the court finds that Travis was appropriately designated as the 30(b)(6) deponent for PMA for the areas of inquiry set forth in the deposition notice and that he was adequately prepared.

4.  <u>Perceived Inconsistencies in PMA's Testimony and Alleged New Violations</u>

In its reply brief, Mueller spends much time identifying what it perceives to be inconsistencies between Travis' Rule 30(b)(6) deposition testimony and Travis' and Archie's sworn affidavit testimony submitted in support of PMA's response to Mueller's motion to compel.  Mueller claims that:  (1) Travis testified in his deposition that no computerized index exists for PMA's archived records while Archie stated in her affidavit that "[f]iles within the archival system are searchable by means of a computer database."  (Archie Aff. ¶ 7); (2) Travis testified in his deposition that he was not familiar with the ISO and IRB while he stated in his affidavit that "I am quite familiar with "the

Insurance Services Office ("ISO"), its predecessor, the Insurance Rating Board ("IRB"), the pollution exclusion, and interpretation of the pollution exclusion by administrative agencies such as the IRB and the ISO." (Travis Aff. ¶ 2.); (3) PMA produced a transcript of the deposition of the ISO custodian of records from the *Sunbeam* case in which Cohn is PMA's counsel, even though Travis stated in his affidavit that "no documents relative to the IRB, ISO, the IRB memorandum, or PMA's construction of the pollution exclusion or IRB memorandum are possessed by Mr. Cohn, or any other defense counsel, that have not already been produced in the present litigation." (Travis Aff. ¶ 4.)  In addition, Mueller claims that PMA's response to the present motion revealed two additional violations of the court's July 15 order: (1) the failure of PMA to produce Travis' "electronic notes" referred to by Travis in his affidavit, (Travis Aff. ¶ 7,) and (2) the failure of PMA to identify "the supervisor of the unit [who] was responsible for the claims file from the time Mrs. Maratea stopped handling it until Mr. Travis started handling it."  (Resp. and Mem. to Pl.'s Mot. to Compel Disc. and for Sanctions at 23.)

Mueller has overstated these perceived inconsistencies. Travis did not testify as to unfamiliarity with the IRB and ISO as Mueller claims, but rather he testified that he did not know "the

23

nature of the IRB in 1970 and . . . its purpose or function."
(Travis Dep. at 33.)   The court sees no inconsistency in this
regard.  Travis' affidavit that indicated that there were no other
relevant IRB or ISO documents in Cohn's possession was made after
the IRB record custodian's deposition transcript was provided to
Mueller, and the court finds no inconsistencies.  With regard to
whether a computerized index exists for all archived documents,
since the discovery deadline has been extended to March 31, 2006,
Mueller can depose Archie to clear up any inconsistencies that may
exist between PMA's Rule 30(b)(6) deposition testimony and the
affidavit of Archie submitted by PMA in support of its response to
the motion to compel and for sanctions.  PMA has offered to make a
Rule 30(b)(6) witness available, at its expense, to make clear any
conflicting testimony. (Resp. to Pl.'s Mot. for Leave to File Reply
at 2.)

     As to the alleged new violations, PMA has satisfactorily
explained to the court that the "electronic notes" referred to by
Travis in his affidavit are two computer file notes, one dated
October 12, 1999 and the other dated October 19, 1999, which
pertain to the underlying environmental clean-up litigation.   PMA
has agreed to make these notes available. (*Id.*) The remaining
electronic notes concern communications with counsel and PMA

asserts an attorney-client privilege as to these.  In addition, PMA indicates that the alleged unidentified witness is Laura Archie. (*Id.*)  If this is not correct, then PMA shall identify by name the supervisor of the unit who had temporary responsibility for the Mueller claim.

<u>CONCLUSION</u>

Mueller's motion for sanctions is denied, Mueller's motion to compel is denied as to Interrogatory Nos. 1, 2, 3, 4, 5, 6, 9 (in part) and 10 of its second set of interrogatories and Document Request Nos. 4, 5, and 6 of its second set of document requests, and Requests for Admissions 1, 2, 4, 5, 7, 9, 10, and 12, and Mueller's motion to compel is granted as to Request for Admissions Nos. 13 and 14 and Interrogatory No. 9 as it relates to Request for Admissions Nos. 13 and 14 .  Within fifteen (15) days of the date of entry of this order, PMA shall file amended answers to Requests for Admissions Nos. 13 and 14 and Interrogatory No. 9 as it relates to Request for Admissions Nos. 13 and 14, shall identify by name the supervisor of the unit who had temporary responsibility for the Mueller claim, and shall provide Travis' non-privileged, relevant electronic notes to Mueller.  Also, Mueller may redepose Travis at PMA's cost to clear up the perceived inconsistencies concerning a computerized archives index.  Each party shall bear its own

25

attorney fees and expenses incurred in pursuing the motion and responding to the motion.   Both parties are warned that, henceforth, failure to comply with proper discovery requests and/or orders of the court will lead to entry of a default judgment or dismissal of the claim.

IT IS SO ORDERED this 3rd day of January, 2006.


S/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE